UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STARQUASIA CUNNINGHAM,

                Plaintiff,

    v.

ANDREW SAUL,
*Commissioner of Social Security*,

                Defendant.

**MEMORANDUM & ORDER**
21-CV-03787 (HG) (LGD)

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff Starquasia Cunningham seeks review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of a final decision of the Commissioner of Social Security (the "Commissioner") that denied her applications for disability insurance benefits and supplemental security income. Both Plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to Rule 12(c). *See* ECF Nos. 12, 13, 15. For the reasons set forth below, the Court rejects Plaintiff's argument that her asthma rose to the level of a severe impairment and therefore rejects her argument that the Commissioner failed adequately to account for her asthma when assessing her residual functional capacity to perform work. The Court therefore grants the Commissioner's motion for judgment on the pleadings, denies Plaintiff's motion, and dismisses Plaintiff's case.

## PROCEDURAL HISTORY

### I.    Plaintiff's Application for Benefits

    Plaintiff is a 30-year-old female with a high school education who previously worked as a cashier at a fast-food restaurant between 2013 and 2015. ECF No. 13 at 2; ECF No. 11 at 382.[1]

---

[1] All citations to the parties' memoranda of law in support of their motions for judgment on the pleadings, *see* ECF Nos. 13 & 15-1, refer to the internal pagination in those documents.

On May 14, 2016, when Plaintiff was 24 years old, she was hospitalized because of a motor vehicle accident—she had been "lying in the back of a U-Haul truck which struck a bridge" and "was partially ejected with loss of consciousness." ECF No. 11 at 499. Plaintiff suffered spinal fractures, broken ribs, and a nasal fracture. *Id.* at 499–502. The parties appear to disagree about whether Plaintiff had a collapsed lung that initially appeared on a CT scan, but not in a subsequent chest x-ray. *See* ECF No. 13 at 3; ECF No. 15-1 at 3; ECF No. 11 at 501, 506–07. Plaintiff's x-ray did, however, lead Dr. Christopher DeMauro, a physician at Christina Care Health Services where Plaintiff was taken after her accident, to conclude that Plaintiff may have had an "underlying lung disease or pulmonary contusion." ECF No. 11 at 501, 508.

Plaintiff filed applications for disability insurance benefits and supplemental security income on October 5, 2016, alleging disability since her motor vehicle accident. *Id.* at 130–31, 346, 350. Plaintiff did not identify asthma as a basis for her disability in either her initial applications or a subsequent questionnaire required by the Social Security Administration ("Administration") and instead mentioned only her back injuries. *Id.* at 346–58, 390.

After Plaintiff filed her applications, the state agency responsible for handling the initial assessment of disability on behalf of the Administration requested a consulting examination by Dr. Gregory Grabon, who had never previously treated Plaintiff. *Id.* at 598–603. Dr. Grabon summarized his examination in a report dated February 27, 2017, which included a disclaimer that he had examined Plaintiff purely "for a consultative examination" and that "[n]o doctor-patient relationship exist[ed] or [wa]s implied by th[e] examination." *Id.* at 603. Dr. Grabon noted that Plaintiff had been diagnosed with asthma two years earlier and that her asthma had

---

The citations to all other sources in the record refer to the pagination created by the Court's ECF filing system.

occasionally caused "some wheezing and shortness of breath with walking and exertion." *Id.* at 600. Dr. Grabon further noted, however, that Plaintiff "ha[d] not had any regular frequent attacks" and had never been "hospitalized or intubated" because of her asthma. *Id.* When responding to a checklist that asked about Plaintiff's "environmental limitations," he opined that Plaintiff could "[n]ever" "tolerate exposure" to "[d]ust, odors, fumes, and pulmonary irritants." *Id.* at 608.

The Administration denied Plaintiff's claims in March 2017, and Plaintiff appealed that denial to an administrative law judge ("ALJ"). *Id.* at 132, 137. Before the hearing was scheduled, however, on December 10, 2018, Plaintiff visited a hospital emergency room because she had been "having difficulty breathing" for three days and had been experiencing upper back pain that was "worse with movement and breathing." ECF No. 11-1 at 71. She was treated with a nebulizer and reported that it improved her breathing. *Id.* at 74. A physician's assistant advised Plaintiff to continue using an inhaler that she had at home and to follow up with a pulmonologist. *Id.* at 75.

Plaintiff was initially unrepresented at her hearing before the ALJ. ECF No. 11 at 67–69. The ALJ placed Plaintiff under oath to ask some background questions about the various doctors she had seen, but otherwise adjourned the hearing to give her an opportunity to obtain counsel. *Id.* at 70–79. Plaintiff obtained counsel in advance of her rescheduled hearing, and that counsel has continued to represent her through this appeal. *Id.* at 80–82, 343–45; ECF No. 13. Only three people testified at that hearing: (i) Plaintiff; (ii) Dr. James Todd, "an impartial medical expert"; and (iii) Renee Jubrey, "an impartial vocational expert." ECF No. 11 at 20, 82. The medical and vocational expert testified at the request of the ALJ, based on their review of

3

Plaintiff's records without examining her, and the Administration paid them for their services. *Id.* at 275–76, 297–98.

During the hearing, the ALJ asked the medical expert whether Plaintiff's asthma was a "significant" condition. *Id.* at 89. The medical expert characterized Plaintiff's asthma as "mild" and "intermittent." *Id.* He said that Plaintiff had never been to any "internal medicine visits" for her asthma—meaning that she never saw a pulmonologist as recommended during her emergency room visit in December 2018—a fact which Plaintiff has not disputed. *Id.*; *see* ECF No. 13 at 14–15. The ALJ also asked the vocational expert to opine about the types of jobs Plaintiff could perform in light of her back injuries, and she identified as potential jobs "fast food worker," "cashier," "sales attendant," and "cafeteria attendant." ECF No. 11 at 104–06. The vocational expert further opined that Plaintiff could perform those jobs even if she was required to "avoid exposure to pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas." *Id.* at 106.

## II.     The ALJ's Decision

The ALJ issued a decision on October 13, 2020, concluding that Plaintiff was not disabled, and thereby affirming the denial of her benefits. *Id.* at 29. As required by regulation, the ALJ's decision followed a five-step process to assess Plaintiff's alleged disability. "Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ('Listing of Impairments'); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work; and (5)

4

whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience." *Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022) (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v)). "The claimant bears the burden of proof in the first four steps of the sequential inquiry. In step five, the burden shifts, to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do." *Id.* (internal citations and quotation marks omitted).[2]

      The ALJ followed these five steps by first concluding that Plaintiff had not engaged in substantial gainful activity since the date of her accident on May 14, 2016. ECF No. 11 at 23. In the second step, the ALJ determined that Plaintiff suffered from "lumbar spine degenerative disc disease" and had "a history of lumbar spine fractures," which the ALJ concluded were "severe impairments." *Id.* The ALJ concluded, however, that Plaintiff's asthma and certain other conditions were "non-severe." *Id.*[3] The ALJ explained that Plaintiff's asthma led to one emergency room visit in December 2018, as described above, during which she "reported difficulty breathing," but that Plaintiff's asthma had not caused any additional hospitalizations. *Id.* Although Plaintiff was advised to visit a pulmonologist during that hospitalization, the ALJ noted that she had "no treatment records with a specialist" related to her asthma. *Id.* The ALJ further noted that during Plaintiff's December 2018 hospitalization, she reported that "nebulizer treatments helped her" and that she "ha[d] an inhaler at home." *Id.*

---

[2]     The same five-step analysis applies both to Plaintiff's application for disability insurance benefits and her application for supplemental security income. *See Ayala v. Kijakazi*, No. 20-cv-9373, 2022 WL 3211463, at *3 n.3 (S.D.N.Y. Aug. 9, 2022) (applying the same five-step inquiry to both types of benefits because "[f]or present purposes, the regulatory standards for DIB determinations and SSI provisions are essentially the same"); *Schillo*, 31 F.4th at 69–70 (applying same five-step analysis to both types of claims).

[3]     The other "non-severe" conditions identified by the ALJ were "chronic otitis externa" and "cellulitis of bilateral ears." ECF No. 11 at 23.

5

At the third step, the ALJ considered Plaintiff's severe impairments—*i.e.*, the impairments related to her back injuries—and concluded that they did not rise to the level of severity in the "Listing of Impairments" defined by the Commissioner's regulations. *Id.* Based on Plaintiff's impairments, the ALJ concluded that Plaintiff could "perform the full range of light work" defined in the Commissioner's regulations. *Id.* at 24 (citing 20 C.F.R. §§ 404.1567(b) & 416.967(b)). Specifically, this meant that Plaintiff was "able to lift/carry up to twenty pounds occasionally and ten pounds frequently, sit for six hours and stand or walk for six hours in an eight-hour workday, with normal breaks." *Id.* In reaching this conclusion, the ALJ considered the opinion of Dr. Grabon, who examined Plaintiff during a consultation in February 2017, as described above. *Id.* at 27. The ALJ noted Dr. Grabon's opinion that Plaintiff should not "be exposed to . . . pulmonary irritants" because of her asthma but determined that it was "not supported by the entirety of the medical evidence of record." *Id.* The ALJ ultimately concluded that Plaintiff's asthma "does not result in any work related limitations." *Id.*

The ALJ was unable to conclude at step four whether Plaintiff could perform her past relevant work because she had never engaged in any "relevant work," as defined by the Commissioner's regulations. *Id.* at 28 (citing 20 C.F.R. §§ 404.1565 & 416.965). The ALJ therefore proceeded to step five and concluded that Plaintiff could perform jobs available in the national economy based on her "age, education, work experience, and residual functional capacity." *Id.* In doing so, the ALJ relied on the vocational expert's testimony about the types of jobs Plaintiff could perform, the "exertional level" associated with those jobs, and the approximate number of such jobs available in the national economy. *Id.* at 28–29. The ALJ's decision did not, however, indicate whether he relied on the vocational expert's testimony that Plaintiff could perform those jobs without exposure to pulmonary irritants. *Id.*

6

### III.     <u>Plaintiff's Further Appeal</u>

Plaintiff sought review of the ALJ's decision by the Administration's Appeals Council, which denied her request for review on May 6, 2021. *Id.* at 6–10, 343–45. The Appeals Council's denial rendered the ALJ's decision "the final decision of the Commissioner of Social Security in [Plaintiff's] case." *Id.* at 1. Plaintiff timely appealed to this Court on July 6, 2021. ECF No. 1; *see* 42 U.S.C. § 405(g) (allowing Plaintiff 60 days to appeal the Commissioner's final decision with respect to the denial of disability insurance benefits); 42 U.S.C. § 1383(c)(3) (providing same period of time to appeal Commissioner's final decision with respect to denial of supplemental security income).

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). In evaluating a determination by the Commissioner, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022).

"The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard." *Schillo*, 31 F.4th at 74 (internal quotation marks omitted). But the standard is "not merely hortatory: It requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022). The Court is therefore "required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Schillo*, 31 F.4th at 74. Once an ALJ has made findings of fact, however, the Court "can reject

7

those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)) (internal quotation marks omitted) (emphasis added in *Brault*). Put another way, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Schillo*, 31 F.4th at 74. Although an ALJ is not required to "reconcile[]" "every conflict in [the] record," the ALJ must describe "the crucial factors in any determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

## DISCUSSION

Plaintiff contends that the ALJ committed reversible error when he found Plaintiff's asthma to be a non-severe impairment during step two of his analysis. ECF No. 13 at 9. She further argues that this error infected the ALJ's assessment of Plaintiff's residual functional capacity. *Id.* at 10. The Court holds that the ALJ did not err at either of these stages, for the reasons explained below, and therefore grants the Commissioner's cross-motion for judgment on the pleadings.

### I. The ALJ Correctly Assessed the Severity of Plaintiff's Asthma

To meet her burden at the second step of the disability assessment, Plaintiff must prove that she has an impairment that is both sufficiently severe and meets the duration requirement established by the Commissioner's regulations. The severity requirement means that Plaintiff's impairment must "significantly limit[] [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *Schafenberg v. Saul*, 858 F. App'x 455, 456 (2d Cir. 2021) (applying same regulatory standard to analyze severity requirement). The duration requirement means that Plaintiff's impairment must be "expected to result in death" or "to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509,

8

404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii); *Rucker*, 48 F.4th at 95 (applying same regulatory standard to analyze duration requirement).

Plaintiff cites only one piece of evidence—her consultation with Dr. Grabon after applying for disability benefits—that relates to whether her asthma significantly limits her ability to perform basic work activities. *See* ECF No. 13 at 11. All of the other portions of the medical record that Plaintiff cites merely identify symptoms consistent with asthma, but none is informative on the question of whether her asthma would impact her work. *See id.* These records include:

- A chest x-ray taken shortly after Plaintiff's motor vehicle accident, which a doctor concluded "may represent underlying lung disease or pulmonary contusion," *see* ECF No. 11 at 508;

- Another doctor's notes during the same hospitalization stating that Plaintiff's "[b]reath sounds [we]re slightly diminished," *see id.* at 529;

- A prescription to refill Plaintiff's asthma medication, to be administered through her inhaler, ten days after her accident, *see id.* at 574–76;

- Plaintiff's positive response to nebulizer treatment during her emergency room visit in December 2018, *see* ECF No. 11-1 at 74; and

- A chest x-ray performed in January 2019, which led another doctor to reiterate Plaintiff's asthma diagnosis, *see id.* at 164.

Plaintiff is correct that these records prove she has been diagnosed with asthma, but Plaintiff fails to recognize that "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Bourdier v. Saul*, No. 19-cv-205, 2020 WL 705211, at *6 (E.D.N.Y. Feb. 12, 2020). The ALJ did not conclude that Plaintiff did not *have* asthma—he recognized that she did but nevertheless concluded that her asthma was not "severe," as defined by the Commissioner's regulations. *See* ECF No. 11 at 23. These records do not undermine the ALJ's conclusion because they offer "virtually no evidence that [Plaintiff's] asthma caused more

9

than a minimal effect on [her] ability to work." *Cardoza v. Comm'r of Soc. Sec.*, 353 F. Supp. 3d 267, 280 (S.D.N.Y. 2019).

Plaintiff's attempt to refute the ALJ's finding of non-severity with respect to her asthma, therefore, hinges on Dr. Grabon's opinion that she should never be exposed to pulmonary irritants. The ALJ's decision to discount this aspect of Dr. Grabon's opinion was consistent with the Commissioner's "treating physician rule," which was in place at the time Plaintiff applied for disability benefits.[4] That rule "states that the medical opinion of a claimant's treating physician must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Colgan*, 22 F.4th at 359–60 (internal quotation marks omitted) (citing 20 C.F.R. § 404.1527(c)(2)). "[T]he ALJ must articulate good reasons to rebut the presumption of controlling deference conferred on the treating physician's opinion." *Id.* at 360 (internal quotation marks omitted).

The treating physician rule only applies to medical professionals who had "an ongoing treatment relationship with" Plaintiff and does not apply to medical professionals whom Plaintiff consulted "solely on [her] need to obtain a report in support of [her] claim for disability." 20 C.F.R. § 404.1527(a)(2) (defining scope of treating physician rule for applications for disability insurance benefits); 20 C.F.R. § 416.927(a)(2) (applying same limitations to scope of treating physician rule to applications for supplemental security income). Even though the rule does not apply to one-time consultations with a doctor, an ALJ must still consider any medical opinions offered during such consultations and weigh the opinions according to "the regulatory factors set

---

[4] The Administration promulgated new regulations in January 2017 that "no longer apply the treating physician rule," but the rule continues to apply to applications for benefits that, like Plaintiff's, were submitted before March 27, 2017. *Schillo*, 31 F.4th at 71 n.1.

10

forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c)." *Drake v. Saul*, 839 F. App'x 584, 587 (2d Cir. 2020).[5]

The ALJ "was not required to adopt in the entirety the conclusions of Dr. [Grabon]—a physician with whom plaintiff did not have a treating relationship, and who examined plaintiff only once on a consultative basis." *Rosa v. Comm'r of Soc. Sec.*, No. 19-cv-1433, 2022 WL 2274720, at *9 (E.D.N.Y. June 23, 2022); *see also Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (holding that the ALJ correctly declined to apply the treating physician rule to a medical provider who "treated [plaintiff] only once"). The ALJ's conclusion was consistent with the records created by multiple other doctors, who actually had a doctor-patient relationship with Plaintiff, that recognized Plaintiff's asthma but did not ascribe to it the same limitations as Dr. Grabon. Other courts have agreed in similar circumstances that a plaintiff's asthma was not severe. *Cooper ex rel. I.M. v. Comm'r of Soc. Sec.*, No. 19-cv-2833, 2020 WL 3304802, at *2 (E.D.N.Y. June 18, 2020) (holding that plaintiff's asthma did not rise to the level of a "severe impairment" because it did not cause multiple hospitalizations); *Fortune v. Comm'r of Soc. Sec.*, No. 20-cv-1245, 2021 WL 6136175, at *4 (E.D.N.Y. Dec. 29, 2021) (holding that the objective results of "medical examinations" of plaintiff's lungs undercut the alleged severity of her asthma). Although the ALJ did not explicitly describe each of the regulatory factors when assessing the totality of this evidence, "[t]he ALJ need not undertake 'a slavish recitation of each and every factor,'" so long as his "reasoning and adherence to the regulation are clear." *Pesco v.*

---

[5] These regulatory factors are: "(1) the length, frequency, nature, and extent of the treating relationship, (2) the supportability of the treating source opinion, (3) the consistency of the opinion with the rest of the record, (4) the specialization of the treating physician, and (5) any other relevant factors." *Coleson v. Comm'r of Soc. Sec.*, No. 18-cv-2862, 2020 WL 1989280, at *6 (E.D.N.Y. Apr. 26, 2020).

11

*Kijakazi*, No. 20-cv-1124, 2021 WL 4463228, at *4 (E.D.N.Y. Sept. 29, 2021) (quoting *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)).

Finally, Plaintiff argues that the ALJ's step two analysis was wrong because he incorrectly concluded that her asthma had not persisted for twelve months and therefore failed the duration requirement of the Commissioner's regulations. ECF No. 13 at 11–12. The ALJ wrote that Plaintiff's asthma, along with other conditions Plaintiff has conceded were not severe, "did not exist for a continuous period of at least 12 consecutive months, were responsive to medication and/or treatment, did not require any significant medical treatment and did not result in any continuous functional limitations." ECF No. 11 at 23. Although the ALJ could have used a more precise description, the Court interprets this to mean that the ALJ concluded that some of Plaintiff's non-severe conditions (*e.g.*, "chronic otitis externa" or "cellulitis of bilateral ears") did not meet the duration requirement, whereas her asthma did not meet the severity requirement. *See id.* Since an application for benefits clears step two "only if the claimant's impairment *both* is medically severe *and* meets the duration requirement," the Court finds that the ALJ did not err at this step. *Armstrong v. Colvin*, No. 14-cv-3174, 2016 WL 792407, at *5 (E.D.N.Y. Feb. 29, 2016) (emphasis added) (affirming ALJ's ruling that plaintiff was not disabled).

## II. The ALJ Correctly Assessed Plaintiff's Residual Functional Capacity to Work

Plaintiff also challenges the ALJ's failure to incorporate into his assessment of her residual functional capacity Dr. Grabon's prohibition against working in environments with pulmonary irritants. ECF No. 13 at 10. For the same reasons set forth in the previous section, the ALJ was not required to assign controlling weight to Dr. Grabon's opinion and was free to conclude that it was inconsistent with the remaining medical evidence. The ALJ's discounting of this aspect of Dr. Grabon's opinion was "in keeping with Second Circuit case law" that

12

assigns lesser weight to "the findings of consultative physicians after a single examination." *Bourdier*, 2020 WL 705211, at *4 (holding that ALJ's assessment of plaintiff's residual functional capacity properly afforded "little weight" to opinion of consulting physician). The ALJ was further permitted to credit the testimony of Dr. Todd, the medical expert retained by the Administration, in assessing Plaintiff's residual functional capacity, even though Dr. Todd did not examine Plaintiff, because his testimony about the severity of Plaintiff's asthma was "consistent with the record as a whole." *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018) (holding that "the opinion of a non-examining medical expert . . . may be considered substantial evidence" where such consistency exists).

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion for judgment on the pleadings, *see* ECF No. 12, and GRANTS the Commissioner's motion for judgment on the pleadings, *see* ECF No. 15. The Clerk of Court is respectfully directed to enter judgment and to close this case.

SO ORDERED.

                                                      */s/ Hector Gonzalez*
                                                      HECTOR GONZALEZ
                                                      United States District Judge

Dated: Brooklyn, New York
         December 5, 2022